**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| Vertellus Holdings LLC,<br>201 North Illinois Street<br>Indianapolis, Indiana 46204<br><br>Vertellus Integrated Pyridines LLC,<br>201 North Illinois Street<br>Indianapolis, Indiana 46204<br><br>Vertellus LLC,<br>201 North Illinois Street<br>Indianapolis, Indiana 46204<br><br>Vertellus Specialty Chemicals (Nantong)<br> Co., Ltd.,<br>9 Shengkai Road<br>Nantong City, Jiangsu Province, China<br><br> and<br><br>Vertellus Shanghai Trading Co., Ltd.,<br>Suite 2A Lujiazui Finance Plaza,<br>1217 Dongfang Road Pudong,<br>Shanghai 200120 China<br><br>Plaintiffs,<br><br>v.<br><br>W.R. Grace & Co.-Conn.,<br>7500 Grace Drive<br>Columbia (Howard County), Maryland 21044<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **JURY TRIAL DEMANDED**<br><br>   Civil Action No.<br><br> |

**COMPLAINT**

Plaintiffs Vertellus Holdings LLC, Vertellus Integrated Pyridines LLC, Vertellus LLC,

Vertellus Specialty Chemicals (Nantong) Co., Ltd., and Vertellus Shanghai Trading Co., Ltd.

(jointly "Vertellus" or "Plaintiffs"), bring this Complaint against Defendant W.R. Grace & Co.-Conn. ("Grace" or "Defendant"). On April 14, 2017, Vertellus filed substantially the same claims in the United States District Court for the Southern District of Indiana (Case No. 1:17-cv-01192-TWP-MPB). On September 30, 2018, the Southern District of Indiana dismissed the action, without prejudice, finding it lacked personal jurisdiction over Grace. Vertellus now refiles its claims in this District, where Grace maintains its principal place of business, and alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1.      Vertellus is a manufacturer of specialty chemicals. The chemicals at the heart of this case are pyridine and picolines. Pyridine and picolines are commodity products, making the manufacturing cost of critical importance.

2.      To contain manufacturing costs and be profitable, Vertellus has invested millions of dollars and tens of thousands of hours to develop sophisticated and efficient processes to manufacture these chemicals, including the catalysts used in these processes.

3.      Catalysts are substances that allow chemical reactions to occur more efficiently. Through years of research and testing, Vertellus has developed catalyst formulations for use in the pyridine and picoline reaction processes that increase pyridine and picoline yield benefits. Vertellus's efforts have resulted in a valuable catalyst platform technology, which includes its catalysts compositions, along with extensive know-how as a result of the years of research, testing, and optimization. This platform technology serves as the critical foundation for Vertellus's past and future catalyst development efforts, allowing it to pick and choose the components of its catalysts as it sees fit and to continue to optimize and pursue variations of its formulations.

4.     As a result of its platform technology, Vertellus attained and long maintained a position as a global leader in the pyridine and picoline chemicals market. Vertellus's manufacturing capabilities, however, do not extend to the production of catalysts. Therefore, Vertellus has relied on Grace to manufacture Vertellus's proprietary catalysts for Vertellus's pyridine and picoline reaction processes.

5.     To allow Grace to manufacture catalysts for Vertellus while protecting Vertellus's technology, Vertellus insisted that Grace enter into confidentiality agreements that protect Vertellus's valuable trade secrets and other confidential information. Vertellus has communicated trade secrets and confidential information to Grace, including its catalyst formulations, pursuant to such confidentiality agreements.

6.     Instead of honoring its confidentiality obligations, Grace breached its contractual and other obligations by utilizing Vertellus's trade secrets for purposes other than those permitted by the confidentiality agreements. Grace's research chemist has admitted, under oath, that he simultaneously worked on a catalyst Vertellus developed to enhance pyridine yield while "developing" a catalyst with the same components to improve pyridine yield for a Vertellus competitor.

7.     Rather than independently develop such a catalyst, Grace incorporated Vertellus's trade secrets and confidential information in the product Grace sold to the competitor. Grace has sold and continues to sell catalysts it manufactured for Vertellus, using Vertellus's trade secrets and confidential information, to Vertellus's competitors.

8.     Making matters worse, Grace sought to and did patent Vertellus's proprietary catalyst technology without providing any attribution to Vertellus, claiming Grace's chemist was the sole inventor.  On March 21, 2017, U.S. Patent No. 9,598,366 ("the '366 patent"),

a patent entitled "Improved Process and Catalyst for the Production of Pyridine and Alkyl Derivatives Thereof" issued with Grace as the assignee. *See* Exhibit A.

9.      Despite being aware of Vertellus's claims against it, Grace has continued to file continuation patent applications, deriving from the same application that resulted in the '366 patent, to exploit portions of Vertellus's technology. On July 26, 2018, a Notice of Allowance was issued for a second patent, U.S. Application No. 15/435,714.

10.      Vertellus was unaware of these activities because Grace hid them from Vertellus. Grace continued to work with Vertellus on improved catalysts formulations even though Grace had substantially undermined the value of any improvements by selling Vertellus's prior catalyst to competitors and disclosing Vertellus's platform technology to the world in a patent application.

11.      Prior to Vertellus's learning about Grace's misdeeds, Grace also sought to entice Vertellus to enter into a Joint Development Agreement that would re-define confidential information, reverse and supersede its prior confidentiality obligations, and strip the existing protections afforded Vertellus's trade secrets and know-how. It did so without disclosing that it had filed multiple patent applications or that its intent was to avoid liability for its prior misdeeds.

12.      By its wrongful actions, Grace has used the valuable knowledge it gained from Vertellus to its own advantage and to Vertellus's detriment. Grace has injured Vertellus's ability to compete in the global pyridine and picoline market and misappropriated Vertellus's right to benefit from its research and development efforts.

13.      Through its public disclosures, Grace has also robbed Vertellus of a substantial future competitive advantage to improve upon Vertellus's platform technology.

14. Grace's actions caused Vertellus to incur millions of dollars in losses in 2015 and 2016 and were a significant driver in the necessity for Vertellus to seek bankruptcy protection in 2016.

15. Because Grace has wrongfully patented Vertellus's technology, Vertellus itself is cut off from free exploitation of its own platform technology, which was developed and optimized over more than a decade.

16. In view of the foregoing, this Complaint seeks full legal and equitable redress for Grace's violations of the Defend Trade Secrets Act; the Common Law of the State of New York, including contract law, unfair competition, and misappropriation of trade secrets and ideas; and pursuant to the Maryland Uniform Trade Secrets Act and the Indiana Uniform Trade Secrets Act. Vertellus further seeks a correction of inventorship on Grace's patents, assignment of those patents to Vertellus, and assignment of any current and future patent applications that are traceable back to Vertellus's trade secrets and confidential information.

17. Vertellus seeks punitive damages and attorneys' fees in view of Grace's malicious deeds and the exceptional nature of this case.

**PARTIES**

18. Vertellus Holdings LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 201 North Illinois Street, Indianapolis, Indiana 46204.

19. Vertellus Integrated Pyridines LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 201 North Illinois Street, Indianapolis, Indiana 46204, and is a wholly-owned subsidiary of Vertellus Holdings LLC.

20.    Vertellus LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 201 North Illinois Street, Indianapolis, Indiana 46204, and is a wholly-owned subsidiary of Vertellus Holdings LLC.

21.    Vertellus Specialty Chemicals (Nantong) Co., Ltd. is a limited liability company organized under the laws of the People's Republic of China, with a principal place of business at 9 Shengkai Road, Nantong City, Jiangsu Province, China. It is a wholly-owned, indirect subsidiary of Vertellus Holdings LLC.

22.    Vertellus (Shanghai) Trading Co., Ltd. is a limited liability company organized under the laws of the People's Republic of China, with a principal place of business at Suite 2A Lujiazui Finance Plaza, 1217 Dongfang Road Pudong, Shanghai 200120 China. It is a wholly-owned, indirect subsidiary of Vertellus Holdings LLC.

23.    Vertellus Holdings LLC and Vertellus LLC received the relevant assets and intellectual property from Vertellus Specialties Inc. in a purchase out of bankruptcy that closed on October 31, 2016. For the sake of simplicity, where applicable and as it relates to details occurring on or before October 31, 2016, "Vertellus" also refers to Vertellus Specialties Inc.

24.    More specifically, in 2016, following a bankruptcy proceeding, Vertellus Specialties Inc. and related entities sold substantially all of their assets.

25.    That transaction closed on October 31, 2016. In the purchase of the assets of Vertellus Specialties Inc. (and related entities) out of bankruptcy, Vertellus Holdings LLC acquired by assignment all right, title, and interest in the intellectual property rights at issue in this litigation, including all right, title, and interest to trade secrets and confidential information. Vertellus LLC acquired by assignment all right, title, and interest in the Confidentiality Agreements at issue.

26.     Vertellus Holdings LLC also provided an Exclusive License to Vertellus LLC to the trade secrets and confidential information at issue in this litigation, with limited rights to grant sublicenses. The remaining Plaintiffs acquired through sublicense from Vertellus LLC only those rights in the trade secrets and confidential information at issue insofar as necessary for the operation of their business. Each of the named entities has an interest in the production or sale of pyridine and/or picolines such that each has been harmed by the actions of Grace identified above. The interests identified herein were acquired on or about October 31, 2016.

27.     Vertellus Integrated Pyridines LLC, Vertellus Specialty Chemicals (Nantong) Co., Ltd., and Vertellus (Shanghai) Trading Co., Ltd. are each Licensees of the intellectual property at issue in this litigation.

28.     Upon information and belief, W.R. Grace & Co.-Conn. is a corporation organized and existing under the laws of the State of Connecticut, having a principal place of business at 7500 Grace Drive, Columbia, Maryland 21044.

## JURISDICTION AND VENUE

29.     Jurisdiction is proper in this district pursuant to 18 U.S.C. § 1836, as well as 28 U.S.C. § 1331, § 1338, § 1367, and § 2201.

30.     Upon information and belief, Grace is a global supplier of products, including catalysts. Grace develops, manufactures, imports, markets, offers to sell, and/or sells chemicals throughout the United States.

31.     Grace is subject to personal jurisdiction in this Court with its principal place of business in this district.

32.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PRIOR PROCEEDINGS

33. Vertellus first filed this action against Grace on April 14, 2017, thus tolling the statute of limitations on all counts. On June 7, 2017, Grace filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

34. As the case proceeded, the court entered a case management plan and a stipulated protective order. Vertellus also served discovery requests, which Grace did not answer, arguing that it could not understand Vertellus's allegations and therefore could not respond. To address Grace's purported inability to respond to Vertellus's discovery, Vertellus provided responses to select interrogatories from Grace that, *inter alia*, identified Vertellus's trade secrets, Vertellus's substantial efforts to protect its trade secrets, and its ownership thereof.

35. Grace did not respond to Vertellus's discovery requests after receiving Vertellus's responses to the interrogatories as Grace had promised. Instead, Grace filed a motion for a protective order seeking to have the court deny all discovery until Vertellus could demonstrate a "prima facie" case of theft of trade secrets.

36. On October 6, 2017, the court entered a stay pending a determination on the motion to dismiss.

37. On September 28, 2018, the court granted the motion to dismiss for lack of personal jurisdiction and dismissed the action without prejudice.

## BACKGROUND FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

### Vertellus and the Pyridine Industry

38. Vertellus is a global manufacturer and supplier of, among other things, pyridine and picolines, specialty chemicals that are used in a variety of applications, including agrochemicals. Vertellus has long been a market leader in the research, development, manufacture and sale of pyridine and picolines and is highly skilled in the manufacture of those chemicals, including as it relates to the performance of pyridine and picoline reaction processes.

39.     A critical component in the manufacturing process is the catalyst. Catalysts affect the chemical efficiency of the raw materials and, as a result, can provide a significant competitive advantage in the variable cost of producing pyridine and picolines. Because the market for pyridine and picolines is highly price-sensitive, cost effective manufacturing processes are among the most valuable competitive assets in that space.

40.     Vertellus's efforts to optimize its manufacturing process and catalyst technology have resulted in a valuable catalyst platform technology. For the most part, Vertellus has chosen to protect its platform technology as trade secrets rather than seeking patent protection (which would require public disclosure), believing that protecting its technology as trade secrets greatly enhanced their value.

41.     In view of its proprietary formulations, Vertellus cannot purchase an "off-the-shelf," commercially available catalyst. Instead, Vertellus must find a manufacturer with whom it can work, in confidence, to incorporate Vertellus's platform technology and manufacture a catalyst that will meet its specifications. For years, Vertellus relied upon Grace to be that third-party manufacturer.

42.     Grace represented itself as "the ideal partner" for Vertellus, stating that: "With over 70 years of joint development experience, Grace's materials science capabilities supported by our catalytic science expertise and flexible manufacturing facilities make us the ideal partner to help you develop and commercialize new catalysts."

### Confidential Relationship of the Parties and Information Disclosed

43.     Vertellus entered into Confidentiality Agreements with Grace beginning as early as 1997, and continuing through the present day. These confidentiality agreements were entered into between predecessors in interest to the Plaintiffs and Grace. The predecessors in interest to Plaintiffs were Reilly Industries, Inc. and Vertellus Specialties Inc.

44.     In 2003, Vertellus Specialties Inc. entered into an agreement with Grace entitled "Confidentiality Agreement," hereinafter the "2003 Confidentiality Agreement," to govern and protect the exchange of confidential information, including derivative information, between the parties. *See* Exhibit B.

45.     Since 2003, the parties have renewed their confidentiality obligations on at least three separate occasions. On or about August 2008, Vertellus and Grace began negotiating the next agreement to protect their ongoing exchange of additional confidential information. Vertellus and Grace executed this agreement, entitled Confidentiality Agreement, and hereinafter the "2008 Confidentiality Agreement," in November 2008. *See* Exhibit C.

46.     The parties renewed the 2008 Confidentiality Agreement in 2011. It has thus been in effect continuously since 2008. *Id.* The 2008 Confidentiality Agreement currently controls the confidentiality of information exchanged between the parties, including derivative information.

47.     Since at least 2008, and under the protections agreed to in the 2008 Confidentiality Agreement, Vertellus has provided Grace with detailed instructions and information related to its platform of formulations, techniques, and procedures utilized in the development of customized and suitable catalysts for the manufacture of pyridine and picolines, and in the performance of the pyridine and picoline reaction processes that, among other things, will enhance the processes and increase pyridine and picoline yield.[1]

48.     Vertellus has devoted substantial and continuous financial and intellectual resources to develop a platform technology of improved catalysts for use in pyridine and picoline

---

[1]     In verified interrogatory responses served in Case No. 1:17-cv-01192-TWP-MPB dated September 6, 2017, Vertellus provided Grace an extensive description of the technology Grace misappropriated. Because those interrogatory responses are designated Attorneys' Eyes Only under the protective order in that action, Vertellus has not attached them to this filing.

manufacturing and reaction processes since well before signing the 2008 Confidentiality Agreement, and even prior to signing the 2003 Confidentiality Agreement.

49.     In addition to having received detailed information with regard to Vertellus's improved catalysts as used in the pyridine and picoline manufacturing and reaction processes, Grace has visited Vertellus's Indiana locations and observed Vertellus's confidential processes for making pyridine and picolines at both the laboratory and commercial scale. Grace made such visits under a confidentiality obligation and so as to assist Grace in making catalysts that (1) perform in Vertellus's pyridine and picoline manufacturing processes, and (2) satisfy the specifications Vertellus has developed and requires.

50.     By way of example, Grace visited Vertellus's Indianapolis location in September 2010. During that visit, Vertellus disclosed information about a new catalyst it was testing. Vertellus informed Grace that Vertellus would supply a recipe for the new catalyst by mid-October 2010. Grace visited Vertellus's facilities again shortly after Grace's chemist joined the team working on Vertellus's new catalyst, in October 2011.

51.     Since at least 2008, Vertellus has instructed and discussed with Grace the importance of the specific parameters and ratios of the components used in Vertellus's specific catalyst formulations, as well as the continuum of components thereof, and the most efficient procedures to use to produce Vertellus's catalysts.

52.     As the expert in pyridine and picoline processes, Vertellus's direction and guidance with respect to the testing and manufacture of catalysts for use in the pyridine and picoline processes, particularly the reaction processes, were critical to the development of Vertellus's advanced catalysts. Grace could not and would not have independently made catalysts that provide the benefits that Vertellus's trade secret and confidential formulations deliver.

53.     Vertellus has consistently protected its intellectual property assets, and in particular its trade secrets through its corporate structure and ownership and control of the intellectual property assets, facilities protections, electronic data protection, protection of hard copy documents and research records, employment agreements, and proprietary nomenclature.

54.     To protect its trade secrets, especially its catalyst technology, Vertellus has undertaken significant steps worldwide, including strictly limiting access to its catalysts and formulations, the facilities where the pyridine and picoline reactions processes take place, and disguising all identifying information with regard to Vertellus's suppliers, including heretofore even the identity of Grace.

55.     Grace was aware of Vertellus's efforts to protect its trade secrets, including because Vertellus required Grace to send product to Vertellus's Indianapolis location so that Vertellus could relabel it before sending it to international facilities.

56.     Both the 2003 and 2008 Confidentiality Agreements call for the application of New York law.

### Grace's Wrongful Actions

57.     By the end of 2010, Vertellus had largely completed development of a second generation of pyridine and picoline catalyst with which it was satisfied, and had informed Grace of that fact. Dr. Dorai Ramprasad, a chemist, had just joined Grace's catalyst group.

58.     By late summer 2011, Grace, and specifically Dr. Ramprasad, had begun assisting Vertellus in the testing of its second generation catalyst. Vertellus provided Dr. Ramprasad with extensive access to its confidential information.

59.     Simultaneously, on or about July 2011, Dr. Ramprasad received the directive within Grace to "develop performance improvement" related to "pyridine yield" for a

Vertellus competitor that was purportedly going to switch suppliers unless Grace provided it a catalyst that enjoyed a higher pyridine yield.

60.     With support from others within Grace, Dr. Ramprasad undertook this project, despite his continuing work on Vertellus's catalyst.

61.     In engaging in this project, Grace not only undertook no efforts to maintain Vertellus's confidential information, it selected the same person who was testing the catalyst already developed by Vertellus, which Grace knew to increase pyridine yield, and directed that person to provide one of Grace's customers with a catalyst that would increase pyridine yield.

62.     Grace did not erect a barrier between those who were involved in Vertellus's project and those involved in a parallel project with a competitor to Vertellus.

63.     The resulting product Grace sold to Vertellus's competitor(s) incorporated Vertellus's trade secrets and confidential information and was not materially different from the one developed by Vertellus.

### Grace's Secret Patent Filings

64.     Dr. Ramprasad internally submitted an invention disclosure in February 2012, claiming to have invented something new.  His "invention" was based on Vertellus's trade secrets, formulations, ideas, and confidential information.

65.     Despite being legally obligated to keep Vertellus's pyridine and picoline catalysts and manufacturing and reaction processes confidential, Grace also secretly filed a provisional patent application in the United States Patent and Trademark Office on October 25, 2012. In that application, Grace disclosed trade secrets, formulations, ideas, and information Vertellus had disclosed to Grace through the parties' confidential relationship. The title of the application was "Process for the Production of Pyridine and Alkyl Derivatives Thereof."

66.     Grace did not inform Vertellus of this filing nor ask for its consent to disclose Vertellus's confidential information in this manner.

67.     Without Vertellus's consent or knowledge, Grace then filed a Patent Cooperation Treaty application ("PCT"), a European Patent Application, and a U.S. utility patent application. Grace filed the PCT application on October 24, 2013.

68.     Without Vertellus's consent or knowledge, Grace also filed patent applications in countries around the globe, including in Canada, China, India, Japan, Russia, and Taiwan.

69.     None of these applications discloses Vertellus's critical input to the inventions.

70.     Many, if not all of, these applications have now published, thereby making public substantial portions of Vertellus's trade secret, know-how, and other confidential information to the world. The U.S. Application published in August 2015 and issued on March 21, 2017 as U.S. Patent No. 9,598,366.

71.     On July 26, 2018, a Notice of Allowance issued with regard to another U.S. Application, No. 15/435714. Thus, upon payment of issuance fees by Grace, a second U.S. Patent will issue without attribution to Vertellus.

72.     On information and belief, Grace has also obtained patents internationally, including Japanese Patent No. 6322198 and Taiwanese Patent No. TWI598335.

**Grace's Concealment**

73.     When Vertellus discovered information leading Vertellus to believe that Grace may have sold or otherwise provided Vertellus catalysts to Vertellus competitors, it raised

that concern with Grace and reiterated that the platform technology constitutes Vertellus's intellectual property.

74.     Grace represented, falsely and without disclosing its patent applications, inter alia that "we have acted in good faith under the provisions of the [Confidentiality Agreements] that we have had in place with Vertellus, and that catalysts being made and sold to other customers do not incorporate any Vertellus confidential information."

75.     Indeed, to cover its tracks and protect itself from liability for its misdeeds, Grace sought to entice Vertellus to enter into a Joint Development Agreement that would re-define "confidential information," reverse and supersede its prior confidentiality obligations, and retroactively strip Vertellus of the protected status of trade secrets. While trying to negotiate this new arrangement, Grace never mentioned to Vertellus that it had filed patent applications throughout the world seeking to patent Vertellus's trade secrets and confidential information and derivatives thereof or that it viewed the subject matter of the patent technology as belonging to it, or that it was selling Vertellus's latest catalyst technology to competitors. Vertellus was left on its own to discover Grace's patent filings and Grace's other wrongdoings.

**The Harm to Vertellus**

76.     Grace has caused Vertellus extraordinary harm by publishing Vertellus's trade secret information and by selling catalysts developed by Vertellus to Vertellus's competitors, robbing Vertellus of its intellectual capital built up over decades. By disclosing substantial information to Vertellus's competitors throughout the world, Grace has destroyed opportunities for, and the competitive advantages to be gained by, Vertellus's ongoing use and optimization of its platform technology.

77.     Grace continued to cause harm by providing Vertellus ongoing assistance in the development of a third generation catalyst, which was based on technology Grace, unbeknownst to Vertellus, had already disclosed to the world.

78.     In brief, Grace's actions have caused Vertellus's competitive advantage in the global pyridine and derivatives market, built throughout at least the last decade.

79.     In the year and a half since Vertellus first filed this action, Vertellus's harm has continued to accrue unabated. Not the least of these harms is because Vertellus is purportedly barred from exploiting fully its own catalyst platform technology in view of Grace's purported exclusive patent rights to exclude Vertellus.

80.     Vertellus also seeks punitive damages and attorneys' fees in view of Grace's malicious deeds and the exceptional nature of this case.

## COUNT I
## DEFEND TRADE SECRETS ACT VIOLATION
## 18 U.S.C. § 1832 et seq.

### By All Plaintiffs

81.     Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

82.     Vertellus owns and possesses substantial trade secrets that it utilizes in its business. These trade secrets gave Vertellus an advantage over competitors who did not know or use them. Vertellus derived independent economic value from these trade secrets not being generally known to or readily ascertainable by others.

83.     These trade secrets include, inter alia, catalyst formulations and derivatives, variations, and improvements of said catalyst formulations, as used in the manufacture of pyridine and picolines, all of which provided Vertellus with substantial financial advantages over its competitors. As such, these constitute a platform technology.

84.     Vertellus has taken reasonable measures to protect the secrecy of its trade secrets, including, without limitation, requiring Grace to sign confidentiality agreements before allowing Grace access to the trade secret and confidential information, and by strictly limiting any and all access to Vertellus's catalyst technology and formulations, both internally and externally.

85.     Without permission, Grace wrongfully conveyed Vertellus's trade secret information to the general public by filing patent applications around the world disclosing the trade secrets and omitting Vertellus's critical contributions to the inventions sought to be patented. Grace also misappropriated and conveyed Vertellus's trade secret information to competitors by selling them catalysts incorporating Vertellus's trade secrets. Grace knew, based on its dealings with Vertellus, that Vertellus's catalysts would be highly advantageous in the competitor's pyridine manufacturing process.

86.     Grace acted through unlawful means by breaching its duty to maintain the secrecy of Vertellus's confidential and trade secret information.

87.     Upon information and belief, such conduct continues to the present day.

88.     Grace's actions were and are malicious and willful and have substantially harmed Vertellus.

## COUNT II
## UNFAIR COMPETITION

### By Vertellus LLC

89.     Vertellus re-alleges and incorporates each of the numbered paragraphs of this Complaint as though fully set forth herein.

90.     Unfair competition under New York common law results when one has misappropriated the results of the labor, skill, and expenditures of another with a degree of bad faith.

91.     Grace has misappropriated the results of Vertellus's considerable labor, skill, and expenditures, in violation of New York common law, and converted to its own use Vertellus's substantial labor, skill, and expenditures in developing catalysts that lend a substantial advantage to Vertellus's pyridine and picoline reaction processes.

92.     Specifically, but for Vertellus's disclosure of confidential information to Grace, including research and testing of catalysts, Grace would not have known the value of Vertellus's catalyst technology.

93.     Grace utilized confidential information from Vertellus regarding its pyridine and picoline reaction processes and catalysts, gathered by Vertellus over decades, and exploited this information in its relationships with and sales to Vertellus's competitors.

94.     Grace used Vertellus's confidential information to file multiple patent applications in various jurisdictions throughout the world.

95.     Grace was obligated inter alia by contract to keep all such information and derivative information confidential.

96.     In so doing, Grace has taken Vertellus's substantial property rights in its labor, skill, expenditures, name, and reputation.

97.     Grace engaged in this conduct in bad faith. For example, Grace failed to divulge its patent applications to Vertellus, even after Vertellus questioned Grace's compliance with Grace's confidentiality obligations. In addition, Grace attempted to induce Vertellus to give up its intellectual property rights by proposing a new agreement to supersede Grace's prior confidentiality obligations.

98.     Vertellus has been harmed substantially by Grace's actions, entitling it to damages and equitable relief.

99.     Grace's actions were wanton and willful, thus justifying punitive damages.

**COUNT III**
**MISAPPROPRIATION OF TRADE SECRETS**

**By Vertellus LLC**

100.    Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

101.    Vertellus possesses substantial trade secrets that are utilized in its business and give it the opportunity to obtain an advantage in revenue over competitors who do not know or use them.

102.    Vertellus has taken reasonable measures to protect the secrecy of its trade secrets, including, without limitation, requiring Grace to sign confidentiality agreements before allowing Grace access to the trade secret and confidential information, and by strictly limiting any and all access to Vertellus's catalyst technology and formulations, both internally and externally.

103.    These trade secrets include, inter alia, catalyst formulations and derivatives, variations, and improvements of said catalyst formulations, as used in the manufacture of pyridine and picolines. As such, these constitute a platform technology.

104.    Grace has used and wrongfully disclosed Vertellus's platform of trade secret formulations and variations without Vertellus's consent, in violation of New York common law, by selling Vertellus's catalysts and derivatives thereof to Vertellus's competitors, and by filing patent applications around the world that contain Vertellus's trade secret information omitting Vertellus's substantial contributions to the inventions as set forth in those applications.

105.    Grace's unlawful conduct as set forth above was in disregard of an express confidentiality agreement between Grace and Vertellus.

106.    Grace's actions have substantially harmed Vertellus, entitling Vertellus to damages and equitable relief.

107.    Grace actions were wanton and willful, thus justifying punitive damages.

## COUNT IV
## MISAPPROPRIATION OF IDEAS

### By Vertellus LLC

108.    Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

109.    Vertellus and Grace have entered into confidentiality agreements that govern the disclosure and use of confidential information.

110.    Grace misappropriated Vertellus's ideas for catalysts, as used in the pyridine and picoline reaction processes, which Vertellus had developed through substantial effort and expense and provided to Grace under confidentiality agreements.

111.    Vertellus's ideas were novel and concrete, the source of substantial revenue to Vertellus, and not otherwise known to its competitors.

112.    Grace's actions have substantially harmed Vertellus, entitling Vertellus to damages and equitable relief.

113.    Grace's actions were wanton and willful, thus justifying punitive damages.

## COUNT V
## BREACH OF CONTRACT

### By Vertellus LLC

114.    Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

115.    Multiple contracts between Vertellus and Grace required and continue to require Grace to maintain the confidentiality of Vertellus's confidential and trade secret information.

116.     Grace materially breached its contracts with Vertellus by publishing Vertellus's trade secrets and confidential information to the world. Grace also breached the parties' contracts by utilizing information Vertellus provided to Grace pursuant to the confidentiality agreements to file a patent application and to solicit competitors of Vertellus as customers.

117.     Vertellus has performed under its contracts with Grace.

118.     Grace's breaches have substantially harmed Vertellus, both in its present day opportunities and in its future opportunities. Grace's publication to the world of Vertellus's trade secrets, know-how, and other confidential information has substantially obliterated Vertellus's present and future revenue opportunities.

119.     Based upon the foregoing, Vertellus is entitled to damages and equitable relief.

**COUNT VI**
**CORRECTION OF INVENTORSHIP OF**
**U.S. PATENT NO. 9,598,366**

**By All Plaintiffs**

120.     Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

121.     Grace is the assignee of record to U.S. Patent No. 9,598,366 ("the '366 patent"), entitled Process and Catalyst for the Production of Pyridine and Alkyl Derivatives Thereof.

122.     Dorai Ramprasad, a Grace employee, is the sole inventor named on the face of the '366 patent.

123.     Colin McAteer, Ph.D., of Vertellus, has also contributed to one or more claims of the '366 patent. Specifically, over the course of more than a decade, Dr. McAteer and the

team he directed have developed catalysts to utilize in the pyridine and picoline reaction process, so as to increase pyridine and picoline yield benefits.

124.    Such catalysts, as well as substantial technology related thereto, are described and explained in the patent specification, and included within one or more issued patent claims.

125.    Dr. McAteer is under an obligation to assign all of his inventions to Vertellus.

126.    The Patent Statute, 35 U.S.C. § 256, provides a cause of action to correct inventorship.

127.    Having contributed to one or more claims of the '366 patent, Vertellus is entitled to a determination that Dr. McAteer is an inventor on the '366 patent.

### COUNT VII
### CORRECTION OF INVENTORSHIP OF
### U.S. PATENT NO. [*forthcoming*], Application No. 15/435,714

### By All Plaintiffs

128.    Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

129.    Grace is the assignee of record to Application No. 15/435,714 ("the '714 Application"), entitled Process and Catalyst for the Production of Pyridine and Alkyl Derivatives Thereof.

130.    The Notice of Allowance for this patent was issued on July 26, 2018 and Grace paid the issue fee on October 22, 2018. No patent number is yet available.

131.    Dorai Ramprasad, a Grace employee, is the sole inventor named on the face of this patent.

132.    Colin McAteer, Ph.D., of Vertellus, has also contributed to one or more claims of the forthcoming patent issuing from the '714 Application. Specifically, over the course of more than a decade, Dr. McAteer and the team he directed have developed catalysts to utilize in the pyridine and picoline reaction process, so as to increase pyridine and picoline yield benefits.

133.    Such catalysts, as well as substantial technology related thereto, are described and explained in the patent specification, and included within one or more issued patent claims.

134.    Dr. McAteer is under an obligation to assign all of his inventions to Vertellus.

135.    The Patent Statute, 35 U.S.C. § 256, provides a cause of action to correct inventorship.

136.    Having contributed to one or more claims of the patent issuing from the '714 Application, Vertellus is entitled to a determination that Dr. McAteer is an inventor on the forthcoming patent.

## COUNT VIII
## UNJUST ENRICHMENT

### By Vertellus LLC

137.    Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

138.    Through its employee, Dr. Colin McAteer, and others at Vertellus, Vertellus provided Grace substantial confidential information and trade secrets that Grace then utilized and misappropriated by including them in the various patent applications Grace filed throughout the world (including an application that became United States Patent No. 9,598,366

and another application, No. 15/435,714, for which a notice of allowance recently issued (Count VII), and in issued patents Japanese Patent No. 6322198, and Taiwanese Patent No. TWI598335.

139.   The parties' agreements did not contemplate filing these patent applications, and Grace violated its obligations under the confidentiality agreements by doing so.

140.   Had Grace recognized Dr. McAteer as an inventor on the '366 patent and other patents and applications, Vertellus would have had the opportunity to exploit its ownership interests therein.

141.   Grace by its actions deprived Vertellus of that opportunity and instead elected to exploit Vertellus's platform technology as its own.

142.   Grace retained the benefits and substantial value of Dr. McAteer's work, including but not limited to by claiming to be the sole owner of the '366 patent and other patents and applications and by utilizing trade secrets, confidential information, and/or derivative information, all without compensation to Vertellus.

143.   Such use by Grace is unjust and deserving of compensation to Vertellus.

## COUNT IX
## DECLARATORY RELIEF

### By All Plaintiffs

144.   Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

145.   Under the terms of the 2008 Confidentiality Agreement, the parties acknowledged that money damages would not be a sufficient remedy for breach of the confidentiality obligations, and thus the disclosing party "shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any breach."

146.    Grace's breach of its confidentiality obligations has caused and continues to cause Vertellus to suffer irreparable harm that is not remedied by money damages alone, including through the publication of multiple patent applications disclosing Vertellus's trade secrets and obliterating Vertellus's financial advantage over its competitors.

147.    In view of Grace's violations of its confidentiality obligations, Vertellus is entitled to have assigned to it all patent applications Grace has filed that incorporate confidential information and/or trade secrets that Grace obtained from Vertellus. This includes all patent applications that derive from the common application Grace filed based on Vertellus's confidential information, such as U.S. Provisional Application No. 61/718,385, U.S. Application Nos. 14/437,997 and 15/435,714, U.S. Application and Patent Cooperation Treaty Application No. PCT/US13/66593, and all patents that have issued or may issue as a result of these applications, including United States Patent No. 9,598,366 & the forthcoming patent issuing from the '714 Application. Further, Vertellus is entitled to assignment of any future Grace patent applications that are traceable back to Vertellus's trade secrets and confidential information.

## COUNT X
## UNIFORM TRADE SECRETS ACT

### By All Plaintiffs Except Vertellus LLC

148.    Vertellus incorporates each of the numbered paragraphs of this Complaint as if fully set forth herein.

149.    Vertellus possesses substantial trade secrets that it utilizes in its business. These trade secrets derive independent economic value from not being generally known or readily ascertainable by those who could obtain economic value from their disclosure or use.

150.    Vertellus has taken reasonable measures to protect the secrecy of its trade secrets, including, without limitation, requiring Grace to sign confidentiality agreements before

allowing Grace access to the trade secret and confidential information, and by strictly limiting any and all access to Vertellus's catalyst technology and formulations, internally and externally.

151.   These trade secrets include, inter alia, processes for the manufacture of pyridine and picolines and reactions, catalyst formulations and derivatives, and variations of those formulations, all of which provided Vertellus with substantial financial advantages over its competitors.

152.   Grace has disclosed and used Vertellus's trade secrets without Vertellus's consent, in violation of the Indiana Uniform Trade Secrets Act, Ind. Code § 34-2-3-1 et seq. and/or Maryland Uniform Trade Secrets Act, Md. Code. Ann. § 11-1201 et seq. by selling Vertellus's catalysts and derivatives thereof to Vertellus's competitors, and by filing patent applications around the world that contain trade secret information.

153.   At the time of Grace's disclosure and use, Grace knew or had reason to know it had acquired or derived the trade secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use. Indeed, Grace's unlawful conduct as set forth above was in disregard of an express agreement of confidentiality between Grace and Vertellus.

154.   Upon information and belief, such conduct continues to the present day.

155.   Grace's actions have substantially harmed Vertellus, entitling it to damages, reasonable royalties, and injunctive relief.

156.   Grace's actions were and are willful and malicious, thus justifying exemplary damages and attorney's fees.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment against the Defendant:

1.    Permanently enjoining Defendant from making any further use of Plaintiffs' trade secrets, know-how, and other confidential information, all of which were wrongfully taken by Defendant, or utilizing derivative information;

2.    Permanently enjoining Defendant from engaging in other acts of unfair competition against Plaintiffs;

3.    Compelling Defendant to return all property wrongfully obtained, including Plaintiffs' trade secrets, know-how, and other confidential information;

4.    Compelling Defendant to assign all patents and patent applications based on or derived from Vertellus's trade secret and confidential information to Vertellus;

5.    Awarding past and future damages for the harm caused by Defendant's wrongful acts, plus prejudgment and post judgment interest;

6.    Awarding punitive damages;

7.    Awarding Plaintiffs double damages and attorneys' fees pursuant to 18 U.S.C. § 1836, for Defendant's willful and malicious misappropriation of Plaintiff's trade secrets;

8.    Awarding Plaintiffs attorneys' fees and costs of this action; and

9.    Awarding Plaintiffs all other relief as may be just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues in this case, insofar as permitted by law.

Dated:  October 25, 2018                    Respectfully submitted,


    /s/ Andrew Jay Graham
Andrew Jay Graham (Federal Bar No. 00080)
Philip M. Andrews (Federal Bar No. 00078)
Justin A. Redd (Federal Bar No. 18614)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
Tel:   410-752-6030

Fax:   410-539-1269
e-mail:  agraham@kg-law.com
e-mail:  pandrews@kg-law.com
e-mail:  jredd@kg-law.com


Of Counsel (Motions for Pro Hac Vice Admission To Be Filed):

Deborah Pollack-Milgate
Jessica M. Lindemann
Leah L. Seigel
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel: (317) 236-1313
Fax: (317) 231-7433
dpollackmilgate@btlaw.com
Jessica.Lindemann@btlaw.com
Leah.Seigel@btlaw.com

Scott L. Watson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
Tel: (213) 443-3000
Fax: (213) 443-3100
scottwatson@quinnemanuel.com

Mike Bonanno
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW
Suite 900
Washington, D.C. 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
mikebonanno@quinnemmanuel.com

*Attorneys for Plaintiffs*