# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **VERTELLUS HOLDINGS LLC,** *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Civil Case No. SAG-18-3298 |
| **W.R. GRACE & CO.-CONN.**, | *   ▇▇▇▇▇▇▇▇▇[1] |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Vertellus Holdings LLC, Vertellus Integrated Pyridines LLC, Vertellus LLC, Vertellus Specialty Chemical (Nantong) Co., Ltd., and Vertellus Shanghai Trading Co., Ltd. (collectively "Vertellus"), a chemical manufacturer, filed this lawsuit against one of its suppliers, W.R. Grace & Co.-Conn. ("Grace"), alleging misappropriation of trade secrets, breach of contract, correction of inventorship for two patents, and various related state law claims.[2] ECF 1. Grace filed a counterclaim alleging bad faith assertion of trade secret misappropriation. ECF 27. On August 12, 2021, this Court granted in part and denied in part the parties' cross motions for summary judgment. ECF 199, 200. Specifically, this Court granted summary judgment as to liability for Vertellus LLC as to the claim in Count V that Grace breached the 2008 confidentiality agreement through its patent disclosures. *Id.* This Court granted summary judgment in Grace's favor on

---

[1] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[2] These claims include unfair competition, misappropriation of ideas, and unjust enrichment under New York common law. ECF 1. Vertellus also pleaded a separate claim for declaratory relief. *Id.*

Vertellus's Defend Trade Secrets Act ("DTSA") claim (Count I) and its trade secrets claims under Maryland or Indiana law (Count X). This Court also granted summary judgment in Grace's favor on Vertellus's unfair competition (Count II), trade secrets under New York law (Count III), misappropriation of ideas (Count IV), and breach of contract (Count V) claims insofar as they relate to the ▮ catalyst. *Id.* Finally, this Court granted summary judgment in Vertellus's favor on Grace's counterclaim. *Id.*

Now pending are six motions in limine. ECF 219-227. The motions are fully briefed, ECF 232-252, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below Vertellus's motion in limine no. 1, ECF 219, will be DEFERRED in part and DENIED in part; Vertellus's motion in limine no. 2, ECF 220, will be DENIED; Vertellus's motion in limine no. 4, ECF 223, will be GRANTED in part and DEFERRED in part; and Grace's motion in limine, ECF 222, to exclude evidence and argument about the cost savings Vertellus achieved using the ▮ catalyst will be DENIED. For reasons explained in a separate letter order issued on July 8, 2022, ECF 255, this Court will rule separately on Vertellus's motion in limine no. 3, ECF 221, and Grace's motion to exclude evidence and argument about information previously withheld, ECF 226.

I. **FACTUAL BACKGROUND**

This Court's opinion on the parties' motions for summary judgment, ECF 199, contains a comprehensive discussion of the factual background of this case. At a high level, though, Vertellus and Grace have a decades-long business relationship. Vertellus manufactures chemical compounds called pyridines. Grace produces catalysts, substances which speed up or otherwise optimize chemical reactions and are frequently used in pyridine manufacturing. Grace has supplied Vertellus, and its predecessor company, Reilly Industries, Inc., with catalysts to use in its

2

pyridine synthesis reactions. Vertellus claims that certain information about the catalysts it purchased from Grace constitutes Vertellus's confidential and trade secret information. Vertellus accuses Grace of using this alleged confidential and trade secret information to create and sell catalysts to other Grace customers—Vertellus's competitors—in violation of confidentiality agreements and trade secret protection laws. Vertellus also contends that Grace wrongfully disclosed Vertellus's confidential and trade secret information in public patent filings and that Vertellus's former researcher, Dr. Colin McAteer, should be credited as a co-inventor of Grace's patents.

## II.    LEGAL STANDARD

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Maryland*, No. CV ELH-17-804, 2018 WL 2717834, at *7 (D. Md. June 6, 2018) (unpublished) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Typically, pretrial motions in limine seek to exclude prejudicial evidence before it is offered at trial. *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). These motions help to streamline a case by allowing the Court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987); *see also Changzhou Kaidi*, 102 F. Supp. 3d at 745 ("[Motions in limine] are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013))). Motions in limine further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*,

81 F.3d 1321, 1325 (4th Cir. 1996); *see* Fed. R. Evid. 103(a); *cf.* R. 103(a) advisory committee's note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called "*in limine*" rulings").

Generally, courts should grant a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." *Dorman v. Anne Arundel Med. Ctr.*, No. MJG-15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018) (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)). Ultimately, rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hospitality Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012); *see also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion).

### III. ANALYSIS

#### A. Vertellus's Motion in Limine No. 1

Vertellus's first motion in limine moves to exclude evidence and argument related to three categories of information: "(1) the protectability of the non-zinc loaded catalyst ▇▇ as confidential information or trade secret; (2) Vertellus's efforts to protect its zinc-loaded catalysts, including but not limited to any gaps in confidentiality periods and the existence and substance of prior confidentiality agreements; and (3) the protectability or proprietary nature of Vertellus's zinc-loaded catalysts." ECF 219 at 1. Vertellus argues that each of these categories of information is irrelevant in light of this Court's rulings on summary judgment. This Court will address the first category of information, before addressing the second two together.

##### i. Protectability of Vertellus's Non-Zinc Loaded Catalyst as Confidential Information or Trade Secret

Vertellus argues this Court should preclude evidence or argument about the protectability of Vertellus's non-zinc loaded catalyst ▇▇ as confidential or a trade secret. ECF 219 at 3.

4

Vertellus argues that because this Court's summary judgment opinion held that the non-zinc loaded catalyst ▮ could not be the basis for Vertellus's claims against Grace, any evidence or argument about its proprietary or non-proprietary nature would be irrelevant. *Id.* Vertellus acknowledges, however, that it does not seek to exclude any mention of the non-zinc loaded catalyst ▮, since "the parties may need to reference the existence of the non-zinc loaded catalyst to provide background and context[.]" *Id.* at 3 n.3.

For its part, Grace asks this Court to defer ruling on the admissibility of evidence or argument relating to the non-zinc loaded catalyst ▮ because such evidence may be relevant to Grace's defenses at trial, and several damages issues that may arise. ECF 233 at 4-8. Specifically, Grace argues it is "entitled to cross-examine Vertellus at trial to ascertain what portion of the ▮ in total claimed out-of-pocket expenses relate to ▮." *Id.* at 5. Grace also contends that Vertellus has indicated it plans to "present evidence to the jury relating to the attorneys' fees it has incurred in this case for the jury to consider in connection with an award of punitive damages." *Id.* Grace argues, however, that the vast majority of those fees have been spent pursuing its claims related to the non-zinc loaded catalyst ▮, which this Court resolved against Vertellus. Accordingly, Grace argues it would be unfair to allow Vertellus to present evidence related to its attorney's fees "without allowing Grace an opportunity to introduce rebuttal evidence showing that a significant portion of Vertellus's legal fees were spent pursuing a claim that accounted for nearly ▮ percent of Vertellus's originally claimed damages – *a claim resolved against Vertellus as a matter of law*." *Id.* at 6 (emphasis in original). Finally, Grace argues that Vertellus may argue at trial that Grace "could have developed pyridine catalysts only by relying on Vertellus's confidential information[,]" and that, in response, Grace must be allowed to argue

5

that it independently developed ▇, and that ▇ was proprietary to Grace, not Vertellus. *Id.* at 7.

In its reply, Vertellus clarifies that it does not intend to argue that Grace's actions related to ▇ support an award of punitive damages and that, with respect to attorney's fees, the jury "can be told simply that a portion of those fees relates to issues not before the jury, without reference to the particular claims or their outcome." ECF 245 at 5. Moreover, Vertellus concedes that "Grace is free to argue that a portion of Vertellus's research and development costs had nothing to do with the zinc-loaded catalysts" since Vertellus only sought to preclude evidence related to the *protectability* of the ▇ catalyst. *Id.* Finally, Vertellus argues that Grace should not be able to argue that ▇ was proprietary to it because (1) there is no evidence in the record to support that assertion, and (2) Vertellus would be forced to respond with evidence that it was "*Vertellus* who showed Grace the value of ▇ [.]" *Id.*

This Court agrees with Grace that the best approach is to defer ruling on these issues until they become relevant at trial. Vertellus seeks to prevent Grace from offering evidence or argument about the protectability of the ▇ catalyst, but Grace's briefing makes clear it would only seek to offer such evidence or argument if prompted by Vertellus's case-in-chief. Thus, if Vertellus presents argument or evidence—whether related to its out-of-pocket expenses, its attorney's fees, or Grace's independent ability to produce pyridine catalysts—that opens the door to a response by Grace about the protectability of ▇, this Court will consider whether such evidence is appropriate at that time.

> ii. **Vertellus's Efforts to Protect Its Zinc-Loaded Catalysts and the Protectability of those Catalysts**

Next, Vertellus argues that this Court should exclude evidence or argument related to Vertellus's efforts to protect its zinc-loaded catalysts and the protectability of its zinc-loaded

6

catalysts. ECF 219 at 4-6. Specifically, Vertellus argues that because this Court's summary judgment opinion "determined as a matter of law that Grace breached the 2008 confidentiality agreement as to the zinc-loaded catalysts when it published the '366 patent, the jury need not consider prior agreements or issues surrounding the protection of information prior to the existence of the 2008 confidentiality agreement." *Id.* at 5. According to Vertellus, "[i]n deciding that the zinc catalyst formulations were Vertellus's confidential information, the Court necessarily concluded the formulations were non-public and protectable information, including because Vertellus had taken adequate steps to preserve their confidentiality." *Id.* at 6. Vertellus places significant weight on Grace's failure to contest, at summary judgment, that Vertellus took reasonable steps to safeguard the secrecy of the formulation of ███████.

Vertellus's argument, however, overreads this Court's conclusions in its summary judgment opinion. This Court's decision on Vertellus's breach of contract claim did not involve a factual finding on Vertellus's efforts to protect its alleged trade secrets. While it is true that this Court found that Grace breached the 2008 confidentiality agreement by disclosing confidential information as defined in that agreement, that does not mean this Court "necessarily concluded" that "Vertellus had taken adequate steps to preserve the[] confidentiality" of that information for purposes of a misappropriation of trade secrets claim. *Id.* at 6. As Grace points out, Vertellus's trade secrets claim involves an element that requires Vertellus to prove that it took "reasonable measures to keep . . . [its trade secrets] information secret." ECF 199 at 49. Its breach of contract claim, by contrast, did not depend on such proof.

Regardless, this Court denied summary judgment with respect to Vertellus's misappropriation of trade secrets claim, yet Vertellus's motion essentially asks for a directed finding on an element of that claim. Vertellus is, of course, free to rely on some or all of the same

7

facts it relied on in its breach of contract claim to prove that it acted to protect its trade secrets, but this Court left Vertellus's trade secrets claim—including all of its elements—to be decided by a factfinder. The fact that Grace did not meaningfully dispute this element at summary judgment also does not mean it conceded the matter. Grace argued that there was a genuine dispute of material fact about whether it misappropriated Vertellus's trade secrets, and this Court agreed. But Grace's silence on Vertellus's efforts to protect its alleged trade secrets does not absolve Vertellus of its burden to prove that element of its claim at trial. Accordingly, because Vertellus must prove that element, Grace will be allowed to dispute it with any countervailing evidence.[3]

Accordingly, Vertellus's motion in limine no. 1, ECF 219, will be deferred in part and denied in part.

### B. Vertellus's Motion in Limine No. 2

Vertellus's second motion similarly seeks to use this Court's conclusions on its breach of contract claim and apply them to bar potentially relevant evidence related to Vertellus's trade secrets claim. Vertellus asks this Court to preclude Grace from introducing any evidence or

---

[3] The parties similarly argue about whether the breach of contract analysis in this Court's summary judgment opinion included findings about *both* ███ *and* ███, or whether this Court's discussion was limited to ███. This Court acknowledges that the summary judgment opinion referred to Vertellus's zinc-loaded catalyst*s*—plural—in finding that Grace's patent filings breached the 2008 confidentiality agreement. Grace is also correct, however, that the focus of both Vertellus's summary judgment briefing, and this Court's opinion, was almost exclusively on ███ ███ and the alleged modifications of it that Grace sold to Vertellus's competitors—and *not* on ███. In light of the rulings above, though, this Court declines to wade back into this dispute at this juncture. Vertellus must prove the elements of its misappropriation of trade secrets claim, and it is unclear to this Court (at least at this point) how the parties' dispute over whether the '366 patent disclosed the formulation of ███ affects that ruling. This Court does not doubt that this dispute may prove relevant as the parties move toward trial, and this Court is willing to consider it if and when that time comes. But the dispute does not seem to bear on this Court's conclusion here, which is simply that the summary judgment opinion did not absolve Vertellus of its burden to prove all elements of its misappropriation of trade secrets claim and that it, correspondingly, did not bar Grace from contesting those elements.

8

argument "that suggests information concerning the formulations for Vertellus's zinc-loaded catalysts was publicly available at the time it was provided to Grace." ECF 220 at 1. According to Vertellus, "[i]n holding that 'information conveyed to Grace about zinc-loaded catalysts is confidential information as defined in the 2008 agreement,' the Court necessarily recognized that the information concerning zinc-loaded catalysts that was conveyed by Vertellus to Grace was **not** publicly available at the time of disclosure." ECF 220 at 2 (quoting ECF 199 at 42) (emphasis in original). This argument is premised on the fact that the definition of "confidential information" in the confidentiality agreement excluded information that "at the time of disclosure" was "available to the public." *Id.* at 1. As Grace points out, though, "[s]imply because *some* of the information Vertellus conveyed to Grace about zinc-loaded catalysts was confidential does not mean that *all* of the information Vertellus conveyed to Grace about zinc-loaded catalysts was confidential." ECF 234 at 4.

This Court's summary judgment opinion recognized that "[w]hether Dr. Ramprasad could have and did develop catalysts without relying on Vertellus's confidential information is ultimately a dispute of fact that should be reserved for trial." ECF 199 at 43. Accordingly, Vertellus may attempt to prove that Dr. Ramprasad did, indeed, rely on Vertellus's confidential information, and Grace is entitled to rebut that presentation with any evidence of its own that the information Vertellus claims was confidential was not. This conclusion is consistent with this Court's finding on the breach of contract claim that "even if a factfinder determines that Dr. Ramprasad reproduced the information in the patents wholly without the use of Vertellus's confidential information, Grace would still be in breach of the agreement." *Id.* at 44. That was because "the confidentiality agreement exempts 'independently developed' information from its definition of 'confidential information,' only if the employees engaged in the independent development did not have access

9

to the other party's confidential information." *Id.* (quoting ECF 150-14 ¶ 7(e)). Because this Court found that "Dr. Ramprasad had access to Vertellus's confidential information related to its zinc-loaded catalysts during the time he was also allegedly conducting his own research that led to his patent filings[,]" it found that Grace had breached the agreement whether or not Dr. Ramprasad, in fact, *relied on* Vertellus's confidential information. But that finding was limited to the terms of the confidentiality agreement and limited to this Court's finding on whether Grace breached that agreement in its patent filings (as was the conclusion that the information constituted "confidential information" under the agreement's definition of that term). With respect to the remaining factual disputes, though, this Court specifically envisioned, and certainly did not foreclose, a dispute over the degree to which Grace relied on information Vertellus conveyed to Grace about the zinc-loaded catalysts. Whether some of that information is publicly available is relevant to that dispute.

Vertellus's motion in limine no. 2, ECF 220, will be denied.

### C. Vertellus's Motion in Limine No. 4

Vertellus's final motion seeks to prevent Grace from introducing any evidence or argument about the circumstances under which Vertellus's former chief executive officer Richard Preziotti left Vertellus. ECF 223. This matter appears to have been hotly contested between the parties during discovery, including in separate proceedings to enforce a third-party subpoena on one of Vertellus's shareholders in the United States District Court for the District of Delaware. Vertellus argues that "[t]he circumstances of Mr. Preziotti's departure from Vertellus have nothing to do with any claim or defense that will be submitted to the jury." *Id.* at 3. In response, Grace requests that this Court defer ruling on this motion until it becomes clear that Mr. Preziotti will appear live at trial. ECF 237. Nonetheless, Vertellus asks that this Court preclude any attorney argument or

10

questions to other witnesses about the circumstances of Mr. Preziotti's departure regardless of whether he appears live at trial. ECF 249.

The parties' briefing on this issue provides no factual detail or context about how, if at all, Mr. Preziotti's departure relates to any claims or defenses at issue in this case. Based on Grace's opposition, though, it appears that Grace only intends to broach this topic if "Mr. Preziotti appears live at trial and provides false testimony about the circumstances of his termination[,]" in which case Grace "may seek to impeach his testimony using the evidence Vertellus now asks the Court to exclude." ECF 237 at 2. Accordingly, this motion will be granted insofar as it relates to any attorney argument or questions to witnesses other than Mr. Preziotti. However, this Court will defer ruling on this motion insofar as it relates to Mr. Preziotti himself. If Mr. Preziotti provides live testimony at trial, this Court will consider the propriety of any questioning on this topic at that time after an appropriate proffer from Grace on its alleged relevance.

Accordingly, Vertellus's motion in limine no. 4, ECF 223, will be granted in part and deferred in part.

### D. Grace's Motion in Limine Regarding the ▮ Catalyst

Grace argues that Vertellus should be prohibited from introducing opinion testimony, evidence, or argument that it is entitled to damages traceable to the performance gains it achieved using the ▮ catalyst. ECF 222. According to Grace, Vertellus cannot possibly substantiate such a claim. *Id.* Vertellus's damages expert, Dr. Patrick Kennedy, plans to testify that each of the Grace catalysts delivered increased cost savings to Vertellus compared to the previous catalyst used by Vertellus. *Id.* at 2. According to Dr. Kennedy, Vertellus realized ▮ cost savings when it switched from using the ▮ catalyst (not supplied by Grace) to the ▮ catalyst from Grace, an additional ▮ when it switched from ▮, and then another ▮ when

11

it switched from ▆ to ▆. *Id.* at 3. Vertellus's theory is that by misappropriating Vertellus's trade secrets to create and sell catalysts to Vertellus's competitors, Grace gave those competitors "a cost advantage in manufacturing pyridine that would have otherwise been captured by Vertellus alone." *Id.* As a result, Vertellus argues that ▆ its primary competitor, "used this advantage to flood the market with low-cost pyridine beginning in 2015, which resulted in lower prices ("price erosion") and lower profits for Vertellus." *Id.*

Dr. Kennedy posits both "low" and "high" values of claimed price erosion damages. "The 'Low' value is predicated on the market competition induced by Vertellus's competitors' use of catalyst with performance allegedly equivalent to ▆. The 'High' value is predicated on the market effects allegedly induced by Vertellus's competitors' use of catalyst with performance equivalent to ▆." *Id.* at 4 (internal citation omitted). Grace argues:

> According to Vertellus, ▆ is the only competitor that drove down the market price and profitability of pyridine. The only zinc-promoted catalyst Grace ever supplied to ▆ was ▆.[4] Because ▆ and ▆ do not deliver equivalent yields, ▆ can be the equivalent of only ▆ or ▆, but not both. . . . A comparison of the components of the catalysts, as well as the development history, demonstrate that it cannot be ▆.

*Id.* at 5. According to Grace, then, "the production efficiency gains ▆ achieved . . . must correspond to the ▆ cost savings Vertellus achieved in moving from ▆ to ▆ [, and] . . . . there is no possibility that Vertellus was cheated out of the ▆ in 'High' marginal efficiency gains as a result of ▆ use of Grace-supplied catalyst." *Id.* at 6.

Vertellus opposes the motion on two grounds. First, it argues that Grace's motion is akin to an untimely *Daubert* motion that reiterates an argument already rejected by this Court that was made in Grace's prior *Daubert* motion challenging Dr. Kennedy's analysis. ECF 239 at 3. Second,

---

[4] Grace later admits this is inaccurate and that Grace also sold ▆. ECF 243 at 2 n.2. According to Grace, that mistake is inconsequential to its argument. *Id.*

12

Vertellus argues that Dr. Kennedy's analysis is proper and supported by evidence in the record, and that Grace is simply asking this Court to adopt its view of disputed facts. Vertellus argues that record evidence demonstrates that ▮—which Grace sold ▮ after it sold ▮ ▮— "improved ▮ pyridine yields by ▮ over those it obtained by ▮." *Id.* at 5. Therefore, in Vertellus's view, "to the extent it is reasonable, as Grace argues, to 'presume' ▮ was 'akin' to Vertellus's first-generation zinc catalyst (▮), it would be just as reasonable for the jury to conclude ▮ was 'akin' to Vertellus's second-generation zinc catalyst (▮)." *Id.* at 5.

This dispute goes to the merits of this case, and the weight that should be afforded to Dr. Kennedy's analysis and testimony, not the admissibility of his testimony. At bottom, Grace is just arguing that Dr. Kennedy's conclusions are wrong and unsupported by the evidence. And Vertellus argues the opposite. But this Court's role at this stage is not to weigh in on the merits, or to assess whether expert opinions are correct, incorrect, or adequately supported by the evidence. "In light of their limited purpose, motions *in limine* should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *Ihnken v. Jenkins*, Civ. No. CCB-11-3508, 2015 WL 590562, at *1 (D. Md. Feb. 11, 2015) (quoting *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010)). Moreover, it "is not the office of a motion in limine" to "'urge[] the Court to exclude a theory of damages[,]'" which is exactly what Grace urges here. *Id.* (quoting *Imagexpo, LLC v. Microsoft Corp.*, 299 F. Supp. 2d 550, 551 (E.D. Va. 2003)).

Grace's motion in limine, ECF 222, to exclude evidence and argument about the cost savings Vertellus achieved using the ▮ catalyst will be denied.

## IV. CONCLUSION

For the foregoing reasons, Vertellus's motion in limine No. 1, ECF 219, will be DEFERRED in part and DENIED in part; Vertellus's motion in limine no. 2, ECF 220, will be DENIED; Vertellus's motion in limine no. 4, ECF 223, will be GRANTED in part and DEFERRED in part; and Grace's motion in limine, ECF 222, to exclude evidence and argument about the cost savings Vertellus achieved using the ▮ catalyst will be DENIED. A separate order follows.

Dated: July 11, 2022

/s/
Stephanie A. Gallagher
United States District Judge