**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **VERTELLUS HOLDINGS LLC,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-18-3298** |
| | * | |
| **W.R. GRACE & CO.-CONN.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Vertellus Holdings LLC, Vertellus Integrated Pyridines LLC, Vertellus LLC, Vertellus Specialty Chemical (Nantong) Co., Ltd., and Vertellus Shanghai Trading Co., Ltd. (collectively "Vertellus"), a chemical manufacturer, filed this lawsuit against one of its suppliers, W.R. Grace & Co.-Conn. ("Grace") in October, 2018, alleging misappropriation of trade secrets, breach of contract, correction of inventorship for two patents, and various related state law claims. ECF 1. Grace filed a counterclaim alleging bad faith assertion of trade secret misappropriation. ECF 27. On August 12, 2021, this Court granted in part and denied in part the parties' cross motions for summary judgment. ECF 199, 200. Currently pending and ripe for disposition is Grace's motion for leave to amend its answer to include the affirmative defense of judicial estoppel ("Motion"). ECF 268. The Motion has been fully briefed; ECF 268-1, 272, 275; and no hearing is necessary, *see* Loc. R. 105.6 (D. Md. 2021). For the reasons stated herein, Grace's Motion will be denied.[1]

---

[1] The parties will have a week to review this memorandum opinion and to suggest redactions that should be made before the opinion is publicly filed.

## I.   PROCEDURAL BACKGROUND

This Court summarized the substantive background of this case in its Memorandum Opinion dated August 12, 2021, and incorporates that factual summary by reference herein.  ECF 199.  Relevant here, however, is a brief discussion of related pertinent actions and the procedural posture of this case.

Vertellus Specialties Inc., Vertellus Specialties Holding Corp., and certain of their direct and indirect subsidiaries as debtors and debtors in possession (collectively, "VSI") filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware on May 31, 2016. ECF 268-2.  In connection with the bankruptcy, VSI was required to publicly file schedules of its assets and liabilities, including all causes of actions against third parties, whether or not a lawsuit had been filed.  *See* ECF 272-2 at 24.  VSI made these disclosures on July 8, 2016, and amended them on July 11, 2016, and December 15, 2016 ("Disclosure Statements").  *See* ECF 272 at 5, 272-2 at 24.  The Disclosure Statements did not identify any potential claim or cause of action against Grace.[2]  ECF 268-1 at 3, 272 at 12.  On September 8, 2016, the bankruptcy court approved a sale of VSI's assets out of bankruptcy by a purchaser that subsequently designated and assigned to Vertellus the intellectual property rights at issue in this action.  ECF 272-4, 272 at 4-5.  That transaction closed on October 31, 2016.[3]  ECF 1 ¶ 25.  On February 24, 2017, the bankruptcy court entered an order confirming VSI's modified first amended plan of liquidation, which also lacked

---

[2] Vertellus contends that although VSI did not list the claims against Grace on its Disclosure Statements, it did disclose them to the bankruptcy court and its creditors during meetings and hearings throughout the course of proceedings.  ECF 272 at 3-4, 12.

[3] Subsequently, the purchaser and liquidating trustee engaged in mediation, resulting in a supplemental settlement term sheet that was approved by the bankruptcy court on August 23, 2017. ECF 272-9.

specific reference to potential claims against Grace. *In re: VSI Liquidating Inc.*, No. 16-11290-JTD, ECF 775 (D. Del. Bankr. Feb. 24, 2017).

On April 14, 2017, Vertellus filed suit against Grace in the Southern District of Indiana alleging misappropriation of trade secrets and ideas, unfair competition, breach of contract, correction of inventorship, and unjust enrichment. *Vertellus (Shanghai) Trading Co. v. W.R. Grace & Co.-Conn*, No. 1:17-cv-01192, ECF 1 (S.D. Ind. Apr. 14, 2017). The case was dismissed in September, 2018 for lack of personal jurisdiction. *Vertellus (Shanghai) Trading Co.*, ECF 108 (S.D. Ind. Sept. 28, 2018). Both parties acknowledge that the allegations in that suit were "substantively identical" to those currently pending in this Court. *See* ECF 268-1 at 4 n.2, *and* ECF 272 at 5.

Vertellus filed this action on October 25, 2018. ECF 1. On November 30, 2018, Grace filed an answer in which it raised the affirmative defense of laches, and asserted a counterclaim for bad faith assertion of trade secret misappropriation. ECF 27 at 19-20. Pursuant to this Court's scheduling order, the deadline to amend pleadings expired on January 28, 2019, ECF 29-1 at 2; and fact discovery closed on September 3, 2020, ECF 114. The parties subsequently filed and fully briefed cross-motions for summary judgment, which were resolved by this Court in August, 2021. ECF 199, 200.

On April 25, 2022, the parties filed a proposed joint pretrial order, which noted that "Grace proposes to amend its asserted affirmative defenses to include judicial estoppel based on Vertellus's failure to disclose in its bankruptcy proceedings its claims against Grace." ECF 217 at 23; *see also* ECF 226 at 7 n.4 ("Grace anticipates pursuing defensive action in the form of a judgment as a matter of law at trial on the basis of judicial estoppel."). Following a status conference on July 14, 2022, this Court directed the parties to propose a briefing schedule "on the

issue of whether Grace may amend its Answer to assert the affirmative defense of judicial estoppel, or whether that defense has been waived." ECF 258, 260. The parties did so, ECF 265, and full briefing ensued, ECF 268, 272, 275.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

However, because Grace is seeking leave to amend well after the deadline for amendment provided by the scheduling order, the liberal Rule 15 standard must be weighed against the requirements of Federal Rule of Civil Procedure 16(b)(4), which reads, "[a] schedule may be modified only for good cause and with the judge's consent." Other cases have described the existing tension between these two federal rules. In *Nourison Rug Corp. v. Parvizian*, like in the instant case, a party sought amendment of its pleading after the expiration of the deadline in the scheduling order. 535 F.3d 295, 297 (4th Cir. 2008). The Fourth Circuit noted that, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Id.* at 298. Accordingly, the Fourth Circuit explained that the party seeking to modify the

scheduling order must meet the good cause requirement of Rule 16(b)(4), before the court would consider the more liberal standard for amendment of a pleading in Rule 15(a)(2). *Id.*; *see also Cook v. Howard*, 484 Fed. App'x. 805, 814-15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.").

## III.   ANALYSIS

In its Motion, Grace seeks to amend its answer to assert an affirmative defense of judicial estoppel based on VSI's purportedly inconsistent Disclosure Statements to the bankruptcy court. Specifically, Grace contends that Vertellus should be estopped from "claim[ing] it has long-believed it had potential causes of action against Grace worth greater than tens of millions of dollars[] [because] Vertellus never endeavored to disclose this asset to the bankruptcy court." ECF 268-1 at 6.  For its part, Vertellus argues that the Motion should be denied because Grace cannot satisfy Rule 16 or Rule 15.  This Court agrees.

### A.   Rule 16(b)

"Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment." *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015). Accordingly, a movant satisfies the good cause requirement by showing that, despite acting diligently in compliance with the schedule, it could not have amended its pleading in a reasonably timely manner.  *Al Jazeera Media Network v. Dow Lohnes PLLC*, No. CV DKC 13-2769, 2015 WL 8316102, at *1 (D. Md. Dec. 9, 2015).  "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification." *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995)).  Carelessness or undue delay are "not compatible with a finding of diligence and offers no reason for a grant of relief."

*Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) (internal citations and quotations omitted); *see also Cook*, 484 F. App'x at 815 ("the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.") (citations omitted).  If the moving party was not diligent, the good cause inquiry should end.  *Rassoull*, 209 F.R.D. at 374.

Grace cannot show good cause for seeking leave to amend its answer at this late stage of litigation.  The documents giving rise to Grace's estoppel defense—namely, the Disclosure Statements—have been available to Grace since July, 2016, when they were initially filed on the public bankruptcy docket.  *See In re: VSI Liquidating Inc.*, ECF 604 (D. Del. Bankr. Dec. 15, 2016).  Given that the information underlying Grace's proposed defense was publicly available for two years before this action began, the contention that it could not have been timely asserted by a reasonably diligent litigant strains credulity.  Moreover, lest there be any doubt that Grace could have been aware of the bankruptcy proceedings, Vertellus specifically brought it to Grace's attention in its complaint filed in the Southern District of Indiana in April, 2017, and again in its pleading a year later in this Court.  *Vertellus (Shanghai) Trading Co.*, ECF 1 ¶¶ 6, 31 (S.D. Ind. Apr. 14, 2017); ECF 1 ¶¶ 14, 23-25.  Simply put, the Disclosure Statements underlying Grace's defense were available for roughly two years—and made known to Grace approximately one year—before it answered Vertellus's complaint; the mere fact that Grace may not have realized the significance of those documents does not justify its claim for relief.  *See Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 590 (D. Md. 2018) ("the fact that [defendant] had not previously 'appreciated' its potential counterclaim, despite having knowledge of the document that purportedly gave rise to it, does not support its claim of diligence.").

Unsurprisingly, Grace paints a different picture.  Grace contends that it needed "substantial discovery" to assess the viability of its estoppel defense, which it persistently sought through interrogatories, document requests, and depositions from September, 2019 until March, 2021. ECF 268-1 at 4, 9-11.  Finally convinced of the viability of its defense, Grace asserts that it "then appropriately included its request to amend . . . at the time of submission of [its] pretrial order" in April, 2022.  *Id.* at 11.  Grace concludes that it "[i]t was diligent for [it] to exercise care and deliberateness in analyzing its claim, pushing for the necessary discovery, and raising the issue half a year before trial."  *Id.*  Grace's argument fails on at least two grounds.

First, irrespective of whether "substantial discovery" would be required to *prove* Grace's proposed defense, it is plainly untrue that such intensive discovery was necessary to *plead* its defense.  To the contrary, to adequately plead an affirmative defense, a defendant need only ensure that the opposing party receives fair notice of the factual basis for the assertions contained therein. *See Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 462 (D. Md. 2014).  It is likely that Grace could have satisfactorily done so on the basis of the Disclosure Statements alone.  Grace's proffered standard would make discovery a functional prerequisite to the assertion of any fact-specific defense, and therefore cannot be reconciled with the Federal Rules' requirement that such defenses be pleaded before discovery commences.  Fed. R. Civ. P. 8(c)(1) (listing estoppel, fraud, assumption of risk, and contributory negligence as among the affirmative defenses that must be alleged in response to a pleading).

Second and perhaps more fundamentally, even were this Court to assume that Grace could not have feasibly asserted its proposed defense until after "substantial discovery" was complete, it would still conclude that Grace lacked diligence in seeking leave to amend.  By Grace's own account, its efforts to obtain discovery regarding its judicial estoppel defense had concluded by

March, 2021.  ECF 268-1 at 11 (detailing discovery efforts, which concluded with Vertellus's response to Grace's request for admission in March, 2021).  Yet, throughout the entire next year, Grace made no effort to amend its answer, instead waiting until April, 2022 to signal its intention to do so.  Grace's substantial delay in seeking leave to amend, even well after it purportedly acquired its sought-after information, is in stark contrast to the caselaw on which it relies.  *See* ECF 275 at 5-6 (citing *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 451 (D. Md. 2018) (plaintiffs were diligent, despite seeking leave to amend six months after scheduling deadline and two months after receiving relevant discovery, because factual basis for amendment was discovered during analysis of voluminous discovery materials), *and Weisheit v. Rosenberg & Associates, LLC*, No. JKB-17-0823, 2018 WL 1942196, at *3-4 (D. Md. Apr. 25, 2018) (good cause shown to amend two months after scheduling deadline based on the need for considerable consultation with experienced counsel before filing the amendment)).  This Court cannot discern, nor does Grace offer, any meaningful justification for waiting over a year to seek leave to amend, during which period dispositive motions were fully briefed by the parties, and resolved by this Court.[4]  Accordingly, even were this Court to generously measure Grace's delay only from March, 2021, it would still find that Grace thoroughly "failed to establish that [it] exercised diligence in seeking leave."  *Al Jazeera Media Network*, 2015 WL 8316102, at *2.

---

[4] To the extent that Grace argues its delay is justified under the Local Rules, it is flatly wrong.  *See* ECF 268-1 at 11 ("Grace [] appropriately included its request to amend in conjunction with Local Rule 106 . . . "); ECF 275 at 5 ("[Grace] raised the defense at a time . .  when the Local Rules called for amendment of the pleadings.").  Local Rule 106.2 merely requires the parties to list any required amendments in their pretrial order.  Loc. R. 106.2 (D. Md. 2021).  Certainly, it does not excuse noncompliance with this Court's scheduling orders, nor does it somehow cleanse an otherwise unjustified delay in seeking leave to amend.

## B. Rule 15(a)

Where a moving party fails to demonstrate good cause under Rule 16(b), the Court need not address the remaining Rule 15(a) factors.  *See, e.g.*, *Nourison Rug*, 535 F.3d at 299 (declining to address the Rule 15(a) factors after upholding the trial court's finding of no good cause under Rule 16(b)).   This Court pauses to note, however, that because Vertellus would suffer prejudice from the late-stage amendment, Grace's motion for leave to amend would be denied even under the more lenient Rule 15 standard.[5]

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2004 & 2015 Supp.) ("Wright & Miller"), § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)).   The burden of showing prejudice falls on "[t]he party opposing amendment." *Atl. Bulk Carrier Corp. v. Milan Exp. Co.*, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010).   The Fourth Circuit counsels that prejudice "will often be determined by the nature of the amendment and its timing . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant."  *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011) (quoting *Laber*, 438 F.3d at 427).   Prejudice can be found "where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] . . . the amendment is offered shortly before or during trial."  *Johnson*, 785 F.2d at 510 (citations omitted).

---

[5] Vertellus also argues—and Grace disputes—that the Motion should be denied under Rule 15(a) because it is futile.  *See* ECF 272 at 10-13.  In light of this Court's conclusion that the risk of prejudice provides an independent basis to deny Grace's Motion, it is unnecessary to reach the parties' futility arguments.

In contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). Thus, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701.

Vertellus has sufficiently established that it will be prejudiced if Grace is permitted to amend its pleading. As an initial matter, prejudice is likely given the timing of the proposed amendment, coming as it does nearly four years into this litigation, well after the close of discovery and resolution of summary judgment motions, and only two months before trial. *See Newport News Holdings Corp.*, 650 F.3d at 439. The threat of prejudice is further enhanced by the fact and context-specific nature of the defense that Grace seeks to assert. *See Martineau v. Wier*, 934 F.3d 385, 394 (4th Cir. 2019). In its briefing in opposition to the Motion, Vertellus specifically enumerated several discovery measures and litigation strategies it would have taken if given adequate time to confront Grace's defense. *See* ECF 272 at 14-15 (stating it would have approached VSI's liquidating trustee about amending the Disclosure Statements, pursued third-party discovery to confirm creditors and the bankruptcy court were aware of the claims, and retained an expert to opine on whether the inclusion of the claims on Disclosure Statements would have impacted the sales process.). Grace's insistence that these measures would ultimately be unsuccessful is somewhat beside the point;[6] what matters instead is that Grace effectively

---

[6] Grace contends that amending the Disclosure Statements would be irrelevant for purposes of evaluating judicial estoppel. ECF 275 at 15 (citing *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1160 (10th Cir. 2007)). Its argument on this point is in tension with *Martineau*, 934 F.3d at 395-96, which acknowledged that a bankruptcy court's decision to allow the debtor to amend his disclosures or reopen his case without imposing any sanction is probative of whether a debtor intended to manipulate the judicial system. Similarly, although Grace decries that third-party discovery is inconsequential because "the requirement is actual *formal* disclosure," it overlooks

prevented Vertellus any meaningful opportunity to pursue them. Grace's efforts to inject a new legal theory, which would require the gathering and analysis of new facts shortly before trial, creates a risk of substantial prejudice. Any serious efforts to minimize such prejudice would require the reopening of fact discovery, the likely redeposition of a series of witnesses, and a nearly inevitable delay of the current trial schedule.

Grace's countervailing arguments as to the lack of prejudice posed by its proposed amendment are meritless. First, Grace asserts that there is no prejudice because "[n]o additional discovery is necessary." ECF 268-1 at 12. More accurately, no additional discovery is necessary on Grace's part, having pursued facts relevant to the issue over the course of several years. *See id.* at 9-11. Second, Grace posits that "belated assertion of judicial estoppel cannot be unfairly prejudicial" because this Court could require the parties "to address judicial estoppel at any time, even if defendant does not raise it at all." *Id.* at 12 (emphasis removed). This argument proves too much. When raised *sua sponte* by a court, the parties are on equal footing to analyze an issue, which they had not previously considered, in light of the facts of the case. Surely, Grace can discern the fundamental distinction between that scenario and its current efforts to litigate an issue that it has unilaterally prepared against a counterparty that was given roughly two-months' notice and deprived the benefit of discovery.[7] Third, Grace asserts that there is no prejudice because its

---

that such discovery is relevant to whether Vertellus's formal non-disclosure was done intentionally for the purpose of taking unfair advantage.

[7] Taken to its logical conclusion, Grace's argument would mean that: because a court can raise the issue *sua sponte*, a defendant's tardy amendment is never prejudicial; and because a defendant's belated amendment is categorically unprejudicial, it is never waived; and since it is un-waivable, a defendant can functionally raise judicial estoppel *sua sponte*. This Court, however, rejects the false equivalency between this Court's power to ensure judicial integrity, and a litigant's power to assert an affirmative defense that its opponent was given no opportunity to prepare to rebut. This Court accordingly declines to adopt reasoning that would functionally transfer the full power of the court to an individual defendant by the transitive property.

discovery requests regarding VSI's bankruptcy placed Vertellus on notice of its proposed estoppel defense. ECF 275 at 2; *see also id.* at 3-4 (collecting cases). However, unlike the cases on which Grace relies, information regarding VSI's bankruptcy was potentially relevant to other issues in the action, such that Grace could have, and likely did, pursue discovery into the bankruptcy for purposes entirely unrelated to a potential estoppel defense. *See* ECF 1 ¶ (alleging that Grace's actions "were a significant driver" in the bankruptcy; *see also* ECF 221 at 2 (anticipating that "Grace plans to invoke the bankruptcy to support the equitable defense of laches."). Where, as here, information regarding VSI's bankruptcy was plausibly pertinent to damages issues and other affirmative defenses, Grace's discovery inquiries do not ameliorate its failure to provide timely notice of its proposed defense.[8]

## C. Waiver

Finally, this Court addresses Grace's contention that it has not—or rather cannot—waive the affirmative defense of judicial estoppel. Grace asserts that judicial estoppel is not waivable because it "can be invoked at any time, even *sua sponte* by the Court." ECF 268-1 at 7. Indeed, it can be invoked at any time: by this Court. But not by Grace at this juncture in litigation.

Judicial estoppel is an affirmative defense, which must be asserted by a party in response to a pleading. Fed. R. Civ. P. 8(c)(1). An affirmative defense that was not raised in a responsive pleading as required by Rule 8(c) will be deemed waived upon a showing of prejudice or unfair

---

[8] Certainly, some of Grace's later, specific discovery requests were more likely than its earlier inquiries to indicate that Grace was exploring a potential estoppel defense. *Compare* ECF 26-8 at 9 (detailing September, 2019 request for documents related to "causes or factors contributing to Vertellus's Bankruptcy"), *with id.* at 11 (describing February, 2021 request for admission that Vertellus did not close certain claims to bankruptcy court). However, given that Grace posed its more targeted inquiries either shortly before, or after, the close of fact discovery, and then subsequently took no action for over a year, this Court would be strained to conclude that Vertellus could have reasonably anticipated Grace's eleventh-hour request to inject the issue into this litigation.

surprise. *RCSH Operations, L.L.C. v. Third Crystal Park Assocs. L.P.*, 115 Fed. Appx. 621, 629 (4th Cir. 2004); *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 n.3 (4th Cir. 2004); *see also Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020). As this Court explained above, Vertellus has convincingly shown that prejudice would result from Grace's belated assertion of its affirmative defense at this stage in litigation. As such, Grace cannot invoke judicial estoppel at this juncture.

Seeking to avoid this conclusion, Grace marshals a bevy of caselaw—which holds that courts may consider judicial estoppel *sua sponte*—in support of a derivative, albeit illogical, argument: because this Court is not bound by Grace's waiver, there has been no waiver. This Court is not persuaded. The Fourth Circuit recognizes that because the doctrine of judicial estoppel is aimed at safeguarding the integrity of the judicial process, a litigant's failure to raise the issue does not preclude a court from considering it *sua sponte*. *Cathcart v. Flagstar Corp.*, 155 F.3d 558 n.2 (4th Cir. 1998); *see also Kaiser v. Bowlen*, 455 F.3d 1197, 1204 (10th Cir. 2006) ("[W]e are not bound to accept a party's waiver of a judicial estoppel argument and may consider the issue at our discretion."). This Court's authority to disregard Grace's waiver, however, does not make its affirmative defense un-waivable. Such a conclusion would render irrelevant the Federal Rules' express requirement that defendants affirmatively plead estoppel defenses, and would nullify this Court's ability to consider the issue at its own discretion. *See Kaiser*, 455 F.3d at 1204. This Court accordingly echoes others that have rejected similar claims that judicial estoppel cannot be waived by a litigant. *See Reyes v. Phoenix Beverages, Inc.*, 207 F. Supp. 3d 206, 217 (E.D.N.Y. 2016). Instead, this Court joins others in this circuit and elsewhere that analyze the potential forfeiture of judicial estoppel using the generally applicable standards for affirmative defenses. *See, e.g.*, *NOA, LLC v. El Khoury*, 2017 WL 11566799, at *8 (E.D.N.C. Sept. 5, 2017) (considering

whether belated judicial estoppel defense would cause prejudice or unfair surprise); *Thomas v. FTS USA, LLC*, 2016 WL 3566657, at *14 (E.D. Va. June 24, 2016) (same); *Frittita v. Fanny's Supper Club*, 2000 WL 35905867, at *5 (W.D.N.Y. Aug. 8, 2000) (concluding that defendant waived affirmative defense of judicial estoppel); *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home*, *Inc*., 2010 WL 985201, at *4 (E.D.N.Y. Mar. 15, 2010) (same).

In sum, Grace failed to properly assert its affirmative defense, and then inexplicably tarried for several years before seeking leave to do so. At this juncture, shortly before trial, the threat of prejudice is too severe to allow Grace's proposed amendment. Grace is bound by the waiver of its judicial estoppel defense notwithstanding the fact that this Court is not.

## IV.    CONCLUSION

For the reasons set forth above, Grace's motion for leave to file an amended answer, ECF 268, will be DENIED. A separate Order follows.

Dated: August 15, 2022                          _____/s/_____
                                                Stephanie A. Gallagher
                                                United States District Judge